THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE HARRY SCHAAP, Appellant.

Fourth Department, April 9, 1970.

*David G. Retchless* for appellant.

*L. Edward Monaghan, Special District Attorney,* for respondent.

MOULE, J. On March 4, 1952, the defendant was sentenced to an indeterminate term in Attica State Prison of one-day-to-life for carnal abuse of a child in violation of section 483-a of the Penal Law. In 1966 he was remanded for resentence because he had not been given a psychiatric examination prior to sentencing as required by section 2189-a of the Penal Law. He was examined and then resentenced to one-day-to-life. On November 30, 1967, this court vacated the resentence because the medical report was insufficient and defective, and the matter was

remitted for a new and current psychiatric examination and resentence. (*People* v. *Schaap*, 28 A D 2d 1202.) On April 19, 1968, the Ontario County Court ordered the required examination. The defendant applied for and was granted permission to employ a psychiatrist at county expense. All examinations were completed prior to February 6, 1969, on which date a hearing as required in *People* v. *Bailey* (21 N Y 2d 588) was conducted. On February 26, 1969, defendant was again resentenced for a term of one-day-to-life from which he appeals.

The question presented to us is whether the reports and hearing prior to the resentence established that the defendant was capable of being benefited by further confinement or would be a danger to society if released (*People* v. *Bailey, supra*).

On the hearing one of the psychiatrists testified that in May, 1968 he examined the defendant who admitted episodes of pedophilic behavior and showed no particular concern about them. In December, 1968 the psychiatrist again examined the defendant. He stated that defendant was a single man about 60 years of age who was a pedophiliac and exhibited a pattern of behavior which was a problem for society, being attracted to girls between the ages of 10 and 13. The psychiatrist found that defendant did not recognize his problem and that it did not yield to psychiatric treatment. He felt that defendant's behavior might very well be repeated and that the defendant if released would be a threat to society.

Another psychiatrist testified that he also examined the defendant in May, 1968 and again in December, 1968. He stated that defendant would be a risk to society as the acts of pedophilia might be repeated. He could not say that defendant actually would be a risk if released, but he felt it was likely that defendant would again engage in violent sexual conduct. It is significant that this psychiatrist noted that defendant had been paroled from Attica in 1962, 10 years after his initial sentence, and had violated his parole within three months by stopping a 10-year-old girl on the way to school and embracing and kissing her. It was his opinion that psychiatric treatment would not produce a change and that the danger of defendant's repeating his sexual behavior would still exist if he was in the community.

The psychiatrist who was retained for the defendant diagnosed the defendant's problem as pedophilia. He said the defendant would not benefit from psychotherapy and that this type of problem generally does not; also, that the prognosis for recovery is notably long. He believed it was unlikely defendant would commit such an act again but that it could not be guaranteed.

It appears from the testimony of all three psychiatrists that they can do nothing further to help him and that there is no reason to assume that his condition will improve other than by the aging process.

The hearing established that defendant would be a danger to society if released and he should not be. Under *People* v. *Bailey* (21 N Y 2d 588, *supra*), he should be detained for as long as is necessary, because no other reasonably safe alternative can be found. Perhaps releasing the defendant under supervision would be proper. This court lacks the power to do so, but suggests that the Parole Board consider the defendant's case with a view toward that possibility.

The judgment of resentence should be affirmed.

MARSH, J. (dissenting). The defendant, now 62 years of age, on March 4, 1952 entered a plea of guilty to violation of section 483-a of the Penal Law. The following day seeking the benefits of what was then considered a new flexible and humanitarian sentencing procedure, he requested and the court imposed a sentence of one-day-to-life. The record shows that he has been continuously incarcerated on the original charge since the date of the sentencing except for a period of two months from March 13, 1962 to May 14, 1962 when he was on parole. In 1966 following a habeas corpus proceeding he was returned to Ontario County Court for resentencing. Upon resentencing a term of one-day-to-life was again imposed which on appeal this court vacated (*People* v. *Schaap*, 28 A D 2d 1202) for failure of the court to comply with section 2189-a of the Penal Law. On February 26, 1969, 17 years after imposition of the original sentence, defendant was again resentenced to one-day-to-life and it is from this sentence the defendant appeals.

Prior to resentencing a psychiatric examination was made of defendant and a written report thereof submitted to the court. Also a hearing was held under the mandate of *People* v. *Bailey* (21 N Y 2d 588), at which the two psychiatrists who conducted the court-ordered examination and a psychiatrist engaged by the defendant testified. Upon the reimposition of the one-day-to-life sentence the court stated that from a review of the psychiatric reports and the testimony of the three doctors adduced at the hearing " The Court is convinced that the defendant, George Harry Schaap, would be dangerous as of this time when at large in the community ".

The law as to the limitations on a sentencing Judge in imposing a one-day-to-life sentence is clearly stated in the opinion of the court in *People* v. *Bailey* (*supra*, p. 594) : " An examination of the statutory purpose as well as the weight of judicial author-

ity indicate that the discretion of the sentencing Judge to mete out a one-day-to-life sentence is limited to those cases in which the record indicates some basis for a finding that the defendant is a danger to society or is capable of being benefited by the confinement envisaged under the statutory scheme. Absent such a basis, the sentence cannot stand (*People* v. *Jackson,* 20 A D 2d 170, 174 [1963], 21 A D 2d 843 [3d Dept., 1964]; *People ex rel. Piatt* v. *La Vallee,* 26 A D 2d 904 [4th Dept., 1966]; *People ex rel. Chumley* v. *Mancusi,* 26 A D 2d 905 [4th Dept., 1966])."

No finding was made by the sentencing Judge that the defendant was capable of being benefited by continued confinement and all three psychiatrists were in agreement that he would not benefit from any additional treatment in prison.

Judge BERGAN, then Presiding Justice of the Appellate Division (3d Dept.), after examining the history and purpose of the one-day-to-life sentencing statute wrote in *People* v. *Jackson* (20 A D 2d 170, 172): "It was envisioned, therefore, as the title of the statute itself suggests, that treatment was an integral and essential part of a program to be followed in the penal system. Where the offender could be treated with some reasonable chance of improvement, it was contemplated that under a sentence so flexible that it might last for his natural life, he would be able to receive adequate treatment and would be discharged if improved to the extent it would be safe to release him."

In considering the propriety of the sentence then, our concern must be with whether there was an adequate basis for a finding by the sentencing court that defendant would be a danger to society if released.

On the hearing Dr. Reynolds, a psychiatrist attached to the Mental Hygiene Unit of Attica Prison for the past 13 years and chief of service there for the past 8 years, testified that he saw defendant first in 1956 for a diagnostic examination and at three-month intervals thereafter for a total of 19 individual sessions together with 30 group sessions during which he was a participant in group therapy. He also made a recent examination of him at the county jail. Based upon his experience with defendant in therapy and his experience with at least 100 other sexual offenders with problems similar to defendant's he testified that it was unlikely he would revert to previous acts of misconduct. While he diagnosed defendant as a pedophiliac his violation of parole in 1962 was not a clinical sex offense and did not constitute pedophilic behavior and in view of defendant's age, his reduced sex drive, his stable mental condition

and understanding of his personality problem Dr. Reynolds testified his prognosis seemed favorable.

The other two psychiatrists who testified based their testimony on two 45-minute court-ordered examinations of defendant at the county jail, one in May, 1968 and one in December, 1968 and on the probation report prepared in 1952. Neither witness, one the Director of Community Mental Health Services of Ontario County, and the other a psychiatrist at Willard State Hospital, had ever worked or had any professional experience in therapy with a patient with a pedophilic behavior problem such as found in the defendant. One testified that defendant's pattern of pedophilic behavior " Might very well be repeated ". The other testified that in his opinion there would be a risk of repeated acts of pedophilia if defendant were released. He felt that defendant might repeat his previous behavior pattern. He could not say he would be a threat to society but expressed the opinion that he might be and likely would be; that there would be some risk involved if he were released.

Even if we were to ignore entirely the testimony of the psychiatrist who had a close professional relationship with defendant through the years of his confinement at Attica Prison and accept unqualifiedly the testimony of the other two psychiatrists, their opinions fall far short of providing a proper basis for a factual finding that the defendant is presently a danger to society requiring his continued confinement. Their equivocal testimony that defendant might repeat his previous conduct, that there would be some risk involved in his release and even that it is likely he would be a threat to society savors of pure speculation and completely fails to provide adequate support for a sentence involving an indefinite continuance of imprisonment of a man now 62 years of age who has already served 18 years for a crime that under alternative sentencing provisions of law permitted a maximum term of imprisonment of 10 years.

Under the authority of section 543 of the Code of Criminal Procedure in the interest of justice, the judgment should be modified by vacating the sentence of one-day-to-life imposed February 26, 1969 and by the imposition of an indeterminate sentence *nunc pro tunc* of 5 to 10 years and the defendant, having served such maximum sentence, should be immediately released.

DEL VECCHIO, J. P., and HENRY, J., concur with MOULE, J.; MARSH, J., dissents and votes to modify the sentence, in opinion in which BASTOW, J., concurs.

Judgment affirmed.